IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

INDIAN RIVER MERCHANT SERVICES, LLC,

             CASE NO.: 25 CV 60670

   Plaintiff,

v.

RYAN NOLTE; CHRISTOPHER AKEL;
SAMANTHA MARTON; OKSANA MOORE;
TRANSACT FIRST, INC.; ONE PAY CLOUD, LLC;
SKYLIGHT PROCESSING, LLC; ROCKET ONE
CAPITAL, LLC; I-POS SYSTEMS, LLC d/b/a
DEJAVOO; DENOVO SYSTEMS, LLC;
MICHAEL SHVARTSMAN; ERIC HANNELIUS,
BRUCE GARELICK; SHLOMO ZENOU a/k/a
MONY ZENOU; and ENCOMPANY INC.,

   Defendants.

_____/

## RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS

Plaintiff, Indian River Merchant Services, LLC ("***Plaintiff***" or "***IRMS***"), by and through

undersigned counsel hereby files this Response in Opposition to the Motion for Sanctions [DE 42]

(the "***Motion***") of Defendants, I-POS Systems LLC ("***IPOS***"), Denovo Systems LLC ("***Denovo***"),

and Shlomo "Mony" Zenou's ("***Zenou***") (collectively, "***Movants***").  In support of this Response in

Opposition, IRMS respectfully states as follows:

## SUMMARY OF POSITION

Movants have consistently attempted, in bad faith, to use and misconstrue various

procedural mechanisms to avoid the fact that they have ultimately been responsible and involved

in the development of software and affiliated terminals that would allow them to conceal the nature

of the transactions at issue. Movants' request for sanctions under Rule 11 was previously denied,

and even though there is significant evidence that has subsequently been discovered to support IRMS's claims, its claims are not frivolous. There is also no basis to claim that IRMS should be held liable under 1927 when no action has occurred to vexatiously increase the litigation. And, even if there were a basis to support the Motion, it should be summarily denied as a result of a lack of compliance with Local Rule 7.1(a).

## **LEGAL ARGUMENT**

1.      On or about March 14, 2025, less than thirty days before the instant lawsuit was filed, the United States Bankruptcy Court in and for the Southern District of Florida entered an Order Denying a Motion for Sanctions, attached hereto as **Exhibit A**, that sought relief on the same set of facts as the instant Motion. **Exhibit B.**

2.      Pursuant to Fla. Stat. § 95.015, and as confirmed by the Bankruptcy Court's Order, attached hereto as **Exhibit C**, Indian River had thirty days to pursue any claims that it may have had, including its pending claims against the Movants. Fla. Stat. § 95.015 tolls the statute of limitations during the pendency of a bankruptcy case, and the Movants did not object to the inclusion of that language in the Bankruptcy Court's Order.

3.      Nonetheless, the Movants have, upon receipt of service, immediately sought, **yet again**, to refile and seek the same type of relief that has previously denied. However, they did not comply with the procedural requirements necessary to obtain the relief sought.

4.      As an initial matter, the Movants did not meet and confer with the Plaintiff as was otherwise required by the local rules. Notably the Movants did not comply with Local Rule 7.1(a)(2), and did not meet and confer with the Plaintiff. This mandates summary denial of the Motion. *See Lopez v. Yummy House Chinese Cuisine, Inc.*, 8:18-cv-2460-T-36AAS, 2019 WL 2474657, *1 (M.D. Fla. Jan. 14, 2019) ("Confer means a substantive discussion."); *Greenwood v.*

*Point Meadows Place Condo. Ass'n, Inc.*, 3:10-cv-1183-MMH-TEM, 2011 WL 5358682, *1 (M.D. Fla. Nov. 7, 2011) ("The spirit of Local Rule 3.01(g) requires the parties actually speak to each other in an attempt to resolve the disputed issues.").

5.      Not only did the Movants fail to comply with the Local Rules, but they also otherwise failed to comply with the requirements of Rule 11, by failing to serve correspondence that detailed the alleged deficiencies and would otherwise preclude relief.  Rule 11 mandates that "the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). This enforces Rule 11's aim of "allow[ing] an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010); *see also In re Miller*, 414 F. App'x 214, 217 (11th Cir. 2011) (per curiam) ("This notice requirement 'permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them' and to 'withdraw the potentially offending statements before the sanctions motion is officially filed.'") (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 389 (2d Cir. 2003)).

6.      The safe harbor provision is strictly enforced. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n.4 (2d Cir. 2002).  *Rocket Real Est., LLC v. Maestres*, 2017 WL 4303783, at *4 (S.D. Fla. Apr. 10, 2017), report and recommendation adopted, 2017 WL 4303784 (S.D. Fla. May 18, 2017), aff'd, 749 F. App'x 952 (11th Cir. 2019) (citing *Brickwood Contractors Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004)); *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003); *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir. 2001)).

7. Even if the Motion could be considered under Rule 11, and, as stated the relief sought in identical circumstances was denied, it would still be inappropriate, without additional evidence to support the Movants' claims.

8. In *Montrose Chemical Corp v. American Motorists Ins. Co.*, 117 F.3d 1127, 1133 (9th Cir. 1997), the Ninth Circuit reversed the imposition of sanctions, where counsel failed to plead or investigate diversity jurisdiction in its complaint. And in *Orange Production Credit Assoc.*, the assessment of sanctions was based on factual findings beyond what was pled in the operative complaint.

9. Similarly in *Trump*, Rule 11 Sanctions were warranted where the sanctioned party's counsel was faced with overwhelming evidence to establish conclusively that there was no plausible or reasonable basis in fact. Of note, is the following findings of Judge Middlebrooks:

> When suing someone it helps to know where they live, as this can have subject matter or personal jurisdiction significance. In this case for instance, Mr. Dolan argued that he engaged in no activities in Florida that made him susceptible to suit here. He filed an affidavit stating under oath that he lived in Virginia. His lawyers advised Mr. Trump's lawyers of that. Moreover, the summons in this case indicated an Arlington, Virginia address (DE 27) and the return of service indicated he was served there (DE 27-1). Yet the Amended Complaint alleged that Mr. Dolan was a resident of New York. The Trump lawyers' answer:
>
> > [I]t must be noted that Charles Dolan is an incredibly common name, and Plaintiff's counsel's traditional search methods identified countless individuals with said name across the country, many of whom reside in New York.
>
> While alone not of great significance, this response reflects the cavalier attitude towards facts demonstrated throughout the case. Plaintiff's narrative centered around the idea that Ms. Clinton orchestrated "a malicious conspiracy to disseminate patently false and injurious information about Donald J. Trump and his campaign, all in the hopes of destroying his life, his political career and rigging the 2016 Presidential Election . . . . " (Compl. ¶ 9). To advance this narrative, Plaintiff first described Mr. Dolan as chairman of the DNC (Compl. ¶ 78), then chairman of a national Democratic political organization (Am. Compl. ¶ 96), a senior Clinton Campaign official (*Id.* ¶ 4), and "an individual with intimate ties to the Clinton Campaign and one of its close associates." (*Id.* ¶ 96). The Amended Complaint alleges that Mr. Dolan engaged in a course of racketeering activity involving theft

of trade secrets, obstruction of justice, and wire fraud (*Id.* ¶ 621); conspired to make false statements about Mr. Trump (*Id.* ¶ 658); and conspired to induce the FBI and DOJ to maliciously prosecute him (*Id.* ¶¶ 680-82)

Mr. Dolan's lawyers advised the Trump team that Mr. Dolan had never been the chairman of the DNC, or any other national Democratic political organization, was never a senior Clinton Campaign official, that Ms. Clinton had indicated she did not know him, and that his involvement in the campaign was limited to serving as a volunteer, knocking on doors in New Hampshire in the last week of the campaign. But Plaintiff's narrative remained unchanged.

*See Trump v. Clinton*, 640 F. Supp. 3d 1321, 1327-28 (S.D. Fla. 2022).

10.     These cases all unequivocally establish that while it may be possible to impose sanctions based on a pleading being filed itself, there must be some additional evidence or conduct to support the imposition of sanctions. *Clinton*, 640 F. Supp. 3d 1321, 1332 (S.D. Fla. 2022) ("Every claim was frivolous, most barred by settled, well-established existing law. These were political grievances masquerading as legal claims."). There was no additional evidence that was submitted with the Motion that would otherwise support the allegations set forth therein.

11.     The allegations of the Complaint, taken as a whole and as acknowledged by the Movants themselves contain significant and substantial detail describing how the Movants were engaged in the misconduct that gave rise to the instant Complaint. There is additional evidence that Plaintiff has obtained that would otherwise further demonstrate that the Movants were intimately involved in this dispute. Notably, Randy Nolte, Defendant Ryan Nolte's father, testified that his company, EFT Services, LLC, used IRMS's intellectual property and software, to develop Dejavoo. *See* Excerpts of May 7, 2025 Testimony of Randy Nolte at 96:6-97:5 ("EFT Services tested software between Dejavoo and [IRMS'] affiliate), attached hereto as **Exhibit D.**

12.     Randy Nolte and EFT Services, who were exclusively processing transactions through IRMS, also filed and verified a lawsuit in the United States District Court in and for the Southern District of New York, which is attached hereto as **Exhibit E**, which stated that EFT

purchased a very significant number of ATMS, had a licensing agreement and service agreement with the Movants, but that the Movants had transferred the exclusive right to license its software to the Debtor. The Debtor then demanded and attempted to prevent EFT from engaging in transactions, which resulted in a temporary restraining order being issued.   Moreover, the Complaint specifically alleged that Movants were engaged in a concerted effort to prevent and interfere with EFT's relationships with ISOs, which explicitly included IRMS. Exhibit A ¶¶ 39. It further confirms that Movants were aware of the identity of ISOs and their relationship with EFT and the Debtor, as Movants could not interfere with that relationship without knowing it existed. *Id.* ¶ 38.

13.     This Complaint, and the verified statements that were submitted in support of it further established that there was a significant and good faith basis to believe that the Movants were involved in the inappropriate transfer and misappropriation of the Plaintiff's intellectual property.

14.      Notably, this evidence also includes the Declaration of James Huber, counsel to Dejavoo, verifying that certain conduct, which included conduct involving IRMS and the use of the Dejavoo Software, would violate the law. *See*, **Exhibit F**.

15.     Similarly, Mony Zenou submitted a declaration in that cause, which was also redacted, to conceal the involvement in illegal conduct and activities, which is attached hereto as **Exhibit G**.  It's likely that the unredacted affidavit declaration would highlight the very "illegal" conduct and efforts taken to conceal his involvement in transactions. Zenou also admitted that he was concerned that the Dejavoo software would otherwise result in an enforcement action being commenced against it.

16. Moreover, in that lawsuit, Max Miller, a client of both IRMS and Dejavoo, whose company was listed as another one involved, submitted a declaration that the Dejavoo terminals were being used through, by, and with Defendant Michael Shwartzman to prevent him from operating as set forth in **Exhibit H**.

17. After this litigation had been completed, and commencing in 2021, the Defendants engaged in further conduct that was specifically directed to harm the Plaintiff, and that conduct persisted, as set forth in the Complaint, through 2024. In light of the foregoing allegations, which are well pled in the Complaint, IRMS submits that there is no basis for sanctions to be entered or considered against it.

18. And IRMS, after meeting and conferring with other Defendants in this matter, has separately agreed to prepare and file an Amended Complaint. IRMS continues to work with the other Defendants in this matter.

19. Accordingly, there is no basis to award or consider sanctions and the Motion must be denied.

**WHEREFORE**, IRMS respectfully requests this Court enter an order **(1)** denying the Motion; **(2)** imposing sanctions on the Movants for failure to comply with Rule 11, and **(3)** granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

**MILLENNIAL LAW**
*Attorneys for Plaintiff*
320 SE 11th Street
Fort Lauderdale, Florida 33316
Phone: 954-271-2719

By: */s/ Zachary P. Hyman*
    Zachary P. Hyman
    Florida Bar No.  98581
    zach@millenniallaw.com
    jessica@millenniallaw.com
    assistant@millenniallaw.com

## CERTIFICATE OF STANDING

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in in Local Rule 2090-1(A).

*/s/ Zachary P. Hyman*
Zachary P. Hyman

## CERTIFICATE OF SERVICE

I hereby certify that on this **10th** day of July, 2025, that a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which sent notice of electronic filing to all parties listed below.

*s/ Zachary P. Hyman*
Zachary P. Hyman

<u>**SERVICE LIST**</u>
CASE NO.: 25-CV-60670

Neil D. Kodsi, Esq.
Florida Bar No. 11255
Feldman Kodsi
8325 NE 2nd Avenue, Suite 204
Miami, Florida  33138
Tel.:  305-445-2005
Fax:  305-445-2889
Email:  NKodsi@FeldmanKodsi.com

*Attorney for Defendants Transact First, Inc.; One Pay Cloud, LLC; Rocket One Capital, LLC, Michael Shvartsman, Bruce Garelick, Oksana Moore, Eric Hannelius, and Encompany, Inc.*

Eric Koenig, Esq.
Zane W. Katz, Esq.
Trenam Law
101 East Kennedy Blvd
Suite 2700
Tampa, Florida 33602
Telephone: (813) 223-7474
ekoenig@trenam.com
ranctil@trenam.com
zkatz@trenam.com
fjohnson@trenam.com

*Attorney for Defendants Christopher Akel, Ryan Nolte, Skylight Processing, LLC; and Samantha Marton*

Anthony Aragona, III, Esq.
Florida Bar No. 36676
Global Legal Law Firm
200 W Palmetto Park Rd., Suite 302
Boca Raton, Florida 33432
Telephone: 858-283-7056
Email: aaragona@attorneygl.com

*Attorneys for Defendants I-POS Systems, LLC d/b/a Dejavoo; DeNovo Systems, LLC, and Shlomo Zenou a/k/a Mony Zenou*

Gustavo A. Bravo, Esq.
Bravo Law
1555 Bonaventure Blvd., Suite 157
Weston, FL 33326
Telephone: (954) 790-6711
gbravo@lawbravo.com

*Attorney for Defendant Christopher Akel*